**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Francesca Viola,

     Plaintiff,

         v.                                    Civil Action No. 1:21-10426-LTS

Joshua Benton; President and
Fellows of Harvard College,

     Defendants.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**<u>PLAINTIFF'S THIRD-PARTY BENEFICIARY CLAIM</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

ARGUMENT ........................................................................................................ 3

    I.    The "contract" of which Viola claims to be an intended third party
           beneficiary is not, in fact, an enforceable contract. ................................ 3

          A.    Viola's claim is expressly and exclusively based on the Basic
                Rules. ........................................................................................... 3

          B.    The Basic Rules are not a contract. .......................................... 4

    II.   Even if the Basic Rules were a contract, the document's plain language
           shows that Viola was not an intended beneficiary. ................................ 9

          A.    The plain language of the Basic Rules shows an intent to benefit
                Disqus, not commenters like Viola. ........................................... 9

          B.    The Basic Rules vest Disqus with sole discretion over determining
                and policing violations, and make no definite commitments to third
                parties. ....................................................................................... 13

          C.    The Basic Rules exclude a user's "[r]eal name" from "personal
                identifiable information," precluding any breach based on posting
                Viola's real name. ...................................................................... 15

          D.    Granting Viola (and countless other commenters) third-party
                standing is not consistent with the reasonable expectations of the
                contracting parties. .................................................................... 16

CONCLUSION ..................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agence France Presse v. Morel*,
    769 F. Supp. 2d 295 (S.D.N.Y. 2011) ....................................................................................11

*Beecher v. Google N. Am. Inc.*,
    No 18-cv-00753, 2018 WL 4904914 (N.D. Cal. Oct. 9, 2018) ...........................................6, 7

*Daniels v. Alphabet Inc.*,
    No. 20-cv-04687, 2021 WL 2865147 (N.D. Cal. July 8, 2021) ..............................................7

*Dushkin v. Desai*,
    18 F. Supp. 2d 117 (D. Mass. 1998) ....................................................................................10

*Eagle Bear v. Harvey*,
    No. 19-CV-163-ABJ, 2020 WL 10356632 (D. Wyo. Aug. 25, 2020)...................................16

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ..............................................................................................5, 6

*Freeman v. Town of Hudson*,
    714 F.3d 29 (1st Cir. 2013) ....................................................................................................6

*In re Google Assistant Priv. Litig.*,
    No. 19-cv-04286, 2021 WL 2711747 (N.D. Cal. July 1, 2021) ..............................................7

*In re Google Location Hist. Litig.*,
    No. 5:18-CV-05062-EJD, 2021 WL 519380 (N.D. Cal. Jan. 25, 2021)................................14

*Goonewardene v. ADP, LLC*,
    434 P.3d 124 (Cal. 2019) ...................................................................................................9, 16

*Jackson v. Am. Plaza Corp.*,
    No. 08-civ-8980, 2009 WL 1158829 (S.D.N.Y. Apr. 28, 2009) ...............................11, 12, 14

*Jones v. Aetna Cas. & Sur. Co.*,
    33 Cal. Rptr. 2d 291 (Cal. Ct. App. 1994) .............................................................................11

*Joude v. WordPress Found.*,
    No. C 14-01656, 2014 WL 3107441 (N.D. Cal. July 3, 2014)...................................12, 14, 15

*Kauders v. Uber Techs., Inc.*,
    159 N.E.3d 1033 (Mass. 2021) ..............................................................................................8

*Melendez v. Vaiana*,
    No. EDCV162516JGBSPX, 2017 WL 8183139 (C.D. Cal. Oct. 19, 2017) ...................13, 15

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Mercury Casualty Co. v. Maloney,*
    6 Cal. Rptr. 3d 647 (Cal. Ct. App. 2003)..............................................................................14

*Nguyen v. Barnes & Noble Inc.,*
    763 F.3d 1171 (9th Cir. 2014) ................................................................................................9

*Patton v. Forest Lab'ys, LLC,*
    No. EDCV17922MWFDTBX, 2018 WL 5270476 (C.D. Cal. May 10, 2018).....................16

*Pillar Project AG v. Payward Ventures, Inc.,*
    279 Cal. Rptr. 3d 117 (Cal. App. 2021).................................................................................9

*RI Prop. Wire, LLC v. Linnell,*
    No. CV 18-12297-LTS, 2019 WL 4142502 (D. Mass. Aug. 30, 2019) ..................................6

*Santa Clara Valley Water Dist. v. CH2M Hill, Inc.,*
    No. 19-CV-08295-LHK, 2020 WL 4252677 (N.D. Cal. July 24, 2020).................................9

*Schauer v. Mandarin Gems of California, Inc.,*
    125 Cal. App. 4th 949 (2005) ............................................................................................4, 5

*Sosa v. Onfido, Inc.,*
    No. 21-1107, 2021 WL 3523197 (7th Cir. Aug. 11, 2021) ............................................10, 11

*Spinks v. Equity Residential Briarwood Apts.,*
    171 Cal. App. 4th 1004 (2009) ............................................................................................10

*Svenson v. Google Inc.,*
    65 F. Supp. 3d 717 (N.D. Cal. 2014) .....................................................................................7

*Swift v. Zynga Game Network, Inc.,*
    805 F. Supp. 2d 904 (N.D. Cal. 2011) .................................................................................11

*Troyk v. Farmers Grp., Inc.,*
    171 Cal. App. 4th 1305 (2009) ..............................................................................................7

**Statutes**

Cal. Civ. Code § 1559.....................................................................................................................9

**Other Authorities**

13 *Williston on Contracts* § 37:25 (4th ed.)..................................................................................4

# INTRODUCTION

Francesca Viola adds a new third-party beneficiary claim in her Second Amended Complaint (ECF 60) (the "Complaint" or "SAC").  SAC ¶¶ 103–13.  Because her new claim is no more viable than the breach of contract claim that this Court previously denied (*see* ECF 54) (the "Order"), it too should be dismissed.

Viola was a journalism professor at Temple University and a frequent commenter on various news websites.  Order 1–5.  In 2017, she created a profile on Disqus, a service that provides a commenting platform for thousands of websites.  Order 2; SAC ¶ 18.  One of those websites is the Nieman Journalism Lab (the "Nieman Lab"), which is affiliated with Harvard University.  Order 4.  In May 2018, Viola—under the username "truthseeker"—posted a comment to an article on the Nieman Lab website.  Order 2–5.  Identifying herself as "a journalism professor at a major east coast university," she rejected the article's discussion of an academic paper about "fake news" and pledged to avoid using Nieman as a news source.  Order 4–5.  As the director of the Nieman Lab, Joshua Benton had administrative access to view Viola's email address.  SAC ¶ 42.  After reviewing several of Viola's "truthseeker" posts, Benton published a series of tweets commenting on certain "truthseeker" posts and identifying Viola as "truthseeker."  Order 5–8.

Viola sued Benton and the President and Fellows of Harvard College ("Harvard") (collectively, "Defendants").  Order 8–9.  As litigation proceeded, Viola acknowledged making all of the "truthseeker" comments except for one that labelled Muslims "[s]cum," and urged policymakers to "[d]eport" and "[g]et rid of them."  Order 3.  Defendants moved to dismiss Viola's complaint.  Order 1, 26.  This Court granted that motion in part, dismissing four of Viola's claims, including her contract claim.  *Id*.  The Court carefully reviewed the three documents that Viola offered as predicates for her contract claim.  Order 20–22.  The first was a privacy statement posted on Harvard's website.  Order 20.  The Court held that this was not an "enforceable contract," so it

could not support her claim.  *Id*.  The other two documents were webpages on the Disqus website: the Basic Rules for Disqus-powered Sites (the "Basic Rules") and the Basic Rules for Disqus.[1] Order 21–22.  These short online postings highlight a handful of Disqus policies for the commenting platform.  *See id*.; *see also* SAC ¶¶ 22, 28 & Exs. D, F.  The Court denied Viola's contract claim based on those policies as well, determining that Viola was not a party to those documents and had not alleged that she was a third-party beneficiary of them.  Order 21–22.  Viola now seeks to revive her dismissed contract claim by alleging, this time, that she was an intended third-party beneficiary of the Basic Rules.  SAC ¶¶ 103–13.  Viola's third-party beneficiary claim is as flawed as her previous contract claim and should be dismissed for two reasons.

*First*, Viola fails to identify an actual contract to support her claim of third-party status.  Viola bases her claim exclusively on one document: the Basic Rules.  SAC ¶¶ 103–13.  But this one-way statement of policy is not a contract, and courts routinely decline to elevate explanatory webpages, like the one at issue here, to binding contracts.  Reinforcing this conclusion, Viola does not allege that the Basic Rules are incorporated by reference into any document that actually is a contract.  Because the Basic Rules are not themselves a contract—nor incorporated by reference into any other document that is—Viola is not entitled to enforce the Basic Rules as third-party beneficiary.

*Second*, even if the Basic Rules were a contract, they evince no intention to make Viola (and the millions of other commenters on thousands of websites) third-party beneficiaries.  SAC ¶ 18.  On their face, the Basic Rules restrict behavior and content that could "jeopardize Disqus."

---

[1] The Second Amended Complaint refers to the Basic Rules for Disqus-powered Sites as the "BRDPS" and the Basic Rules for Disqus as "BRD."  SAC ¶¶ 22, 28. Because this motion focuses on Viola's third-party beneficiary claim—which she bases exclusively on the Basic Rules for Disqus-powered Sites—this motion will refer to the Basic Rules for Disqus-powered Sites as simply the "Basic Rules."

SAC Ex. D.  Any downstream benefit to third parties that might flow from Disqus's concern for itself is purely incidental.  Moreover, the Basic Rules vest Disqus with broad discretion to enforce (or not enforce), modify, or expand the policies.  Courts regularly conclude that such open-ended documents preclude third-party-beneficiary status because discretionary language does not commit the contracting party to any definitive action.  Viola's third-party claim therefore should be dismissed as legally deficient on its face.[2]

## ARGUMENT

I.     **The "contract" of which Viola claims to be an intended third party beneficiary is not, in fact, an enforceable contract.**

A.     **Viola's claim is expressly and exclusively based on the Basic Rules.**

Viola bases her third-party beneficiary claim exclusively on the Basic Rules, which she identifies as the relevant contract that Defendants breached.  *See, e.g.*, SAC ¶ 104 ("By using Disqus to administer and monitor the comments section on niemanlab.org, Nieman Lab entered into a contract with Disqus and was bound by the BRDPS."); SAC ¶ 111 ("Defendant Benton *breached the contract created by the BRDPS* by abusing his access as a moderator to deceitfully collect information about Viola, and to intimidate her as a user of Disqus by publishing her identity and identifying information about her employer and colleagues on his Twitter account and targeting harassment toward her.") (emphasis added); SAC ¶ 113 ("As a result of Defendants' breach of the BRDPS …."); *see also* SAC ¶¶ 105–07, 109, 111 (quoting various portions of the Basic Rules in pleading her third-party beneficiary claim).[3]

---

[2] The background facts have been set forth in Harvard's earlier motion to dismiss (ECF 12) and this Court's Order on that motion, so Defendants repeat those facts here only when relevant.

[3] Viola "realleges and reavers" the SAC's preceding paragraphs (SAC ¶ 103), but to the extent they are relevant to the third-party beneficiary claim, those paragraphs simply quote the same provisions she excerpts in pleading this count.  *See, e.g.*, SAC ¶¶ 22–27.

In alleging that she is a third-party beneficiary, Viola cites the following provisions (or portions of these provisions) from the Basic Rules:

- "There are a number of categories of content and behavior, however, that jeopardize Disqus by posing risk to commenters, publishers, and/or third party services utilizing the Disqus platform." *See* SAC Ex. D, *quoted at* SAC ¶¶ 24, 105.

- "Websites or website representatives, including site moderators, publishing inappropriate content or exhibiting inappropriate behaviors in connection with their use of the Service may have their Disqus account and/or Disqus forum suspended or terminated." *See* SAC Ex. D, *quoted at* SAC ¶¶ 26, 107.

- "**Deceitful data collection or distribution**.  User information is for moderation purposes only and collecting any information in a misleading way is prohibited. Distribution of personal identifiable information is prohibited." *See* SAC Ex. D, *quoted at* SAC ¶¶ 25, 106.

- "**Intimidation of users of the Disqus Service**.  Blackmail, extortion, extreme discrimination, and other forms of threatening behavior are prohibited." *See* SAC Ex. D, *quoted at* SAC ¶¶ 26, 106.

Viola does not allege that she is a third-party beneficiary of any contract other than the Basic Rules. *See* SAC ¶¶ 103–13.  Nor does she allege that the Basic Rules are incorporated by reference into any other purported contract or agreement. *See id*.  The Complaint attaches the same documents as its predecessor and adds no further exhibits. *Compare* SAC Exs. A–L *with* ECF 10.

## B.      The Basic Rules are not a contract.

It is black-letter law that "[b]efore a contract can be deemed a third party beneficiary contract, it must first be deemed a contract." 13 *Williston on Contracts* § 37:25 (4th ed.).  A "third party beneficiary's rights are derivative," so the underlying contract accordingly "must be valid and enforceable in the first instance in order for it to give rights to anyone." *Id*.; *see also Schauer*

*v. Mandarin Gems of California, Inc.*, 125 Cal. App. 4th 949, 957 (2005) (requiring putative third-party beneficiary to "plead *a contract*") (emphasis added).[4]

Viola's third-party beneficiary claim fails at the outset for the simple reason that the Basic Rules are not a contract.  *See* SAC ¶¶ 103–13.  They are instead a brief, bullet-pointed list of the types of "categories of content and behavior" that could "jeopardize Disqus" and potentially result in websites having "their Disqus account and/or Disqus forum suspended or terminated."  SAC Ex. D.  The document lacks any prompt to indicate agreement with the bulleted terms—no click-wrap mechanism or "browsewrap" language.  This is no surprise, as the document is a unilateral statement by Disqus outlining Disqus's requirements and expectations, not a bargained-for exchange.  *See id*.  Instead, the document's bottom footer simply asks, "Did this answer your question?"  *Id*.  That question is followed by three emojis.  *Id*.  All told, the Basic Rules operate like a "frequently asked questions" page or an explanatory blog post.  As shown below, courts consistently decline to treat documents like this—technology companies' explanatory webpages or standalone statement-of-use policies—as binding contracts.  The reasons for that refusal apply with equal force here.

First, online publications must meet well-established requirements of contract formation, including an exchange of commitments between the ostensible contracting parties.  Advisory or explanatory postings that lack shared commitments do not qualify as contracts.  "For a contract to exist, there must be an exchange for a promise."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020) (citation omitted), *cert. denied sub nom. Facebook, Inc. v. Davis*,

---

[4] The motion primarily relies on California law based on the governing-law provision in the Disqus Terms of Service.  *See* Ex. A-1.  As discussed below, however, the result is the same were the forum state's laws to apply.  And the contract principles informing this argument are common across jurisdictions.

141 S. Ct. 1684 (2021).  A document is not a contract if it does "not outline shared commitments to which users must abide" and "merely provides information—not commitments—regarding [a technology company's] use of information and how users can control that information."  *Id*. (affirming dismissal of breach-of-contract claim because Facebook's privacy and data use policies were not a contract).  As a one-way statement that specifies expectations and consequences for website operators, but not for Disqus, the Basic Rules fall well short of this standard for contract formation.

Second, when non-contractual documents are not incorporated into a bona fide contract, they are not treated as binding agreements.  Viola does not allege that the Basic Rules are incorporated by reference into any actual contract, such as the Disqus Terms of Service.  *See* SAC ¶¶ 103–13.  Nor could she.  The Disqus Terms of Service in effect at the time of Viola's May 2018 post on the Nieman Lab website do not incorporate the Basic Rules.  *See* Ex. A-1.[5]  To the contrary, those Terms of Service show precisely the opposite intent: they contain a merger or integration clause providing that "[t]hese Terms supersede any previous Terms of Service and represent the *entire agreement* between Disqus and you."  *Id*. (emphasis added).  So not only did the 2018 Terms of Service not incorporate the Basic Rules by reference; they expressly provided that any non-incorporated document was *not* part of the agreement with Disqus.[6]

---

[5] In considering a motion to dismiss, this Court may consider "data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."  *RI Prop. Wire, LLC v. Linnell*, No. CV 18-12297-LTS, 2019 WL 4142502, at *1 (D. Mass. Aug. 30, 2019) (quoting *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)).  "[D]ocuments central to plaintiffs' claim" and "documents sufficiently referred to in the complaint" may "be considered without converting a motion to dismiss into a motion for summary judgment."  *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (citation omitted).

[6] To be clear, Viola does not allege that the Basic Rules are incorporated by reference into any other document, and that non-allegation alone is dispositive.  *See Beecher*, 2018 WL 4904914, at *2.  Defendants simply observe that even if she had alleged that the Basic Rules were incorporated

For an incorporation by reference to be given effect, "the reference must be clear and unequivocal." *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1331 (2009).  Here, by contrast, Disqus's Terms of Service clearly and unequivocally precluded first, the possibility that the Basic Rules could be incorporated into the Terms of Service, and, second, that there could be any separate, collateral agreement between Disqus and the Nieman Lab.  Because the Basic Rules are not a contract, and Viola does not (and cannot) allege that the document is incorporated by reference into a bona fide contract, she is left without a contract to enforce as third-party beneficiary, requiring dismissal.  *See, e.g.*, *In re Google Assistant Priv. Litig.*, No. 19-cv-04286, 2021 WL 2711747, at *10 (N.D. Cal. July 1, 2021) (dismissing contract claim to the extent premised on a FAQ webpage, as the plaintiffs could not "base their contract claim on provisions from different websites, including the 'Google Nest Help Center' and the 'Google Safety Center' because the websites were not binding on the parties") (simplified); *Daniels v. Alphabet Inc*., No. 20-cv-04687, 2021 WL 2865147, at *3 (N.D. Cal. July 8, 2021) (dismissing claim predicated on the plaintiff's suggestion "that the Terms of Service encompass any statements about the SuperChat function posted elsewhere by Defendants," when the plaintiff "fail[ed] to identify any contractual obligation that Defendants breached"); *Beecher v. Google N. Am. Inc.*, No 18-cv-00753, 2018 WL 4904914, at *2 (N.D. Cal. Oct. 9, 2018) (dismissing contract claim when "the crux of the allegations turn[ed] on alleged misrepresentations contained on Google's website, not in the Terms of Service," and the plaintiff did "not allege that the FAQs" were incorporated into the terms of service); *cf. Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 723 (N.D. Cal. 2014)

---

by reference into the Terms of Service, this allegation would fail a matter of law given the plain text of the Terms of Service.

(dismissing contract claim after rejecting the plaintiff's allegations that "the 'contract' is a combination of the [various policies posted on website]").

Although these cases involve California law (which governs under the Disqus Terms of Service, *see* Exhibit A-1 at 12), the result would be the same were the laws of the forum state to apply.  The Massachusetts Supreme Judicial Court has emphasized that "the fundamentals of online contract formation should not be different from ordinary contract formation."  *Kauders v. Uber Techs., Inc.*, 159 N.E.3d 1033, 1048 (Mass. 2021).  Massachusetts applies a two-prong test to determine whether an online document is enforceable as a contract.  *Id*.  That test examines "whether there is reasonable *notice* of the terms and a reasonable manifestation of *assent* to those terms."  *Id*. (emphasis added).  As discussed above, the Basic Rules do not satisfy either requirement.  To provide sufficient notice, a court considers whether the document "conveys the full scope of the terms and conditions" as well as "the interface by which the terms are being communicated."  *Id*. at 1050.  The Basic Rules fall well short of this standard: they do not include the full terms and conditions governing the parties' relationship; the full terms are in the 2018 Terms of Service.  SAC Ex. D; Ex. A-1.

Nor do the Basic Rules meet the assent requirement.  Viola does not, and could not, allege that the Basic Rules are a "click wrap" agreement, by which a user "expressly and affirmatively manifest[s] assent to an online agreement by clicking or checking a box that states that the user agrees to the terms and conditions."  *Kauders*, 159 N.E.3d at 1050.  In fact, the Basic Rules show the absence of any such requirement.  They conclude by asking, "Did this answer your question?" followed by three emojis.  SAC Ex. D.  There is not any "I accept" prompt or anything similar.  *See id*.  The Basic Rules also fail the test for a browsewrap agreement.  They contain no language stating that a user is accepting the terms of Basic Rules and instead reference the Terms of Service,

the latter of which constitutes "the *entire agreement* between Disqus and you."  Ex. A-1 at 13

(emphasis added).  *See generally Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir.

2014).

In short, Viola bases her third-party beneficiary claim exclusively on the Basic Rules.  But

under the law of either of the relevant jurisdictions, the Basic Rules cannot qualify as a contract

and, accordingly, Viola's claim should be dismissed.

## II.   Even if the Basic Rules were a contract, the document's plain language shows that Viola was not an intended beneficiary.

### A.   The plain language of the Basic Rules shows an intent to benefit Disqus, not commenters like Viola.

"A third party beneficiary is someone who may enforce a contract because the contract is

made expressly for his benefit."  *Pillar Project AG v. Payward Ventures, Inc.*, 279 Cal. Rptr. 3d

117, 123 (Cal. App. 2021).  To state a third-party beneficiary claim under California law, a plaintiff

must establish the following elements:

> the express provisions of the contract at issue, as well as all of the relevant
> circumstances under which the contract was agreed to, in order to determine not
> only (1) whether the third party would in fact benefit from the contract, but also
> (2) whether a motivating purpose of the contracting parties was to provide a benefit
> to the third party, and (3) whether permitting a third party to bring its own breach
> of contract action against a contracting party is consistent with the objectives of the
> contract and the reasonable expectations of the contracting parties.

*Goonewardene v. ADP, LLC*, 434 P.3d 124, 130 (Cal. 2019); *Santa Clara Valley Water Dist. v.*

*CH2M Hill, Inc.*, No. 19-CV-08295-LHK, 2020 WL 4252677, at *8 (N.D. Cal. July 24, 2020)

(same).

At bottom, "[t]he test for determining whether a contract was made for the benefit of a third

person is whether an intent to benefit a third person appears from the terms of the contract."  *Pillar*,

279 Cal. Rptr. 3d at 123 (simplified).  "[T]he mere fact that a contract results in benefits to a third

party does not render that party a third party beneficiary."  *Id.*; *see also* Cal. Civ. Code § 1559

(requiring a third party to show that the contract was "made expressly for the benefit of" that party). Whether contracting parties intended to benefit a third party is a "question of ordinary contract interpretation" that should be "inferred, if possible, solely from the language of the written contract." *Spinks v. Equity Residential Briarwood Apts.*, 171 Cal. App. 4th 1004, 1023 (2009) (simplified).[7]

Viola cannot show that the contracting parties intended (or had any motivating purpose) to make her a third party beneficiary. To the contrary, by their plain terms, the Basic Rules declare an intention to protect Disqus. The first paragraph of the Basic Rules explains their purpose: "There are a number of categories of content and behavior … that *jeopardize Disqus* by posing risk to commenters, publishers, and/or third party services utilizing the Disqus platform." SAC Ex. D (emphasis added); *see also* SAC ¶ 105 (quoting this provision as showing intent). This statement of intent alone establishes that Viola, as a commenter, is an incidental beneficiary at most. The Basic Rules exist to protect Disqus and are concerned with harm to commenters only to the extent that such harm also impacts Disqus. *See Sosa v. Onfido, Inc*., No. 21-1107, 2021 WL 3523197, at *6 (7th Cir. Aug. 11, 2021) (rejecting argument that third party was a beneficiary of company's terms of service when the terms "directly benefit[ed] [the software provider and contracting party], which has an interest in prohibiting illegal conduct on its platform and minimizing its exposure to liability related to such conduct" and the court could find nothing to

---

[7] The analysis is the same were Massachusetts law to apply. In Massachusetts, as in California, the intent of the parties is paramount. *See Dushkin v. Desai*, 18 F. Supp. 2d 117, 122 (D. Mass. 1998) ("In order to recover as third-party beneficiaries, the plaintiffs must show that they were intended beneficiaries of a contract between the defendant and [another contracting party]. Only intended beneficiaries, not incidental beneficiaries, can enforce a contract. A party is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties, and the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.") (simplified).

suggest the contract was "intended for the direct benefit" of the third party); *cf. Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 303 (S.D.N.Y. 2011) (rejecting third-party beneficiary theory under California law on the ground that the "[t]he Twitter terms of service" showed no intent to benefit third parties).

"Commenters," like Viola, are mentioned just once in the Basic Rules, and only in the context of acts that "jeopardize Disqus[.]"  *See* SAC Ex. D at 1.  The lack of specific attention and emphasis given to commenters illustrates that Viola was at most an incidental beneficiary of the Basic Rules.  *See Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 917 (N.D. Cal. 2011) (rejecting third-party beneficiary claim because "general references" to non-parties in software company's terms of service did not show that either signatory intended to confer benefits upon third parties); *Jones v. Aetna Cas. & Sur. Co.*, 33 Cal. Rptr. 2d 291, 296 (Cal. Ct. App. 1994) ("The fact that the third party is only incidentally named in the contract or that the contract, if carried out to its terms, would inure to the third party's benefit is insufficient to entitle him or her to demand enforcement.").

The actual content of the seven categories of contents and behavior "not allowed on sites that use Disqus" further underscores the Basic Rules' narrow focus on protecting Disqus.  For instance, the categories warn against "[c]opyright and trademark infringement" or "distributing malware"—in other words, activities that risk liability or damage to Disqus.  SAC Ex. D at 1.  *Compare id. with Sosa*, 2021 WL 3523197, at *6 (holding that terms of service showed company's "interest in prohibiting illegal conduct on its platform and minimizing its exposure to liability related to such conduct," not an intent to benefit third parties); *compare also* SAC Ex. D (prohibiting "[s]ites that take any action that imposes, or may impose (at [Disqus's] sole discretion) an unreasonable or disproportionately large load on [Disqus's] infrastructure") *with Jackson v.*

*Am. Plaza Corp*., No. 08-civ-8980, 2009 WL 1158829, at *5 (S.D.N.Y. Apr. 28, 2009) (finding that provision in Craigslist's terms of use prohibiting users from imposing "an unreasonable or disproportionately large load on our infrastructure" showed intent to benefit Craigslist, and "any benefit received by plaintiffs is incidental").

Viola identifies just two categories of prohibited content and conduct in the Basic Rules that she contends inured to her benefit.  First, the Basic Rules state that "[u]ser information is for moderation purposes only and collecting any information in a misleading way is prohibited," and "[d]istribution of personal identifiable information is prohibited."  SAC Ex. D.   And second, the Basic Rules prohibit "[i]intimidation of users of the Disqus Service," which the rules define as "[b]lackmail, extortion, extreme discrimination, and other forms of threatening behavior."  *Id*.; *see also* SAC ¶ 111 (alleging that Benton "breached the contract created by the BRDPS" by deceitfully collecting data and seeking to intimidate Viola).

Construing the "deceitful data collection" and "intimidation" prohibitions as primarily intended to benefit Viola and other "commenters" makes little sense.  SAC ¶ 108.  The document's plain terms expressly manifest a concern about the risk of jeopardizing *Disqus*.  *See* SAC Ex. D. Any benefit to a commenter, like Viola, is incidental.  *See Joude v. WordPress Found.*, No. C 14-01656, 2014 WL 3107441, at *5 (N.D. Cal. July 3, 2014) (dismissing breach-of-contract claim based on a third-party beneficiary theory because if software company "committed to remove blogs violating" the terms of service, it "did not promise to do so for the benefit of" third-party users).  To conclude otherwise is tantamount to saying that the Basic Rules prohibit copyright or trademark infringement because Disqus is primarily concerned with protecting the interests of rights-holders, or that the Basic Rules restrict malware because Disqus is primarily concerned with protecting the integrity of users' computers.  *See also infra* § II(C) (explaining that the Basic Rules'

provision that "[d]istribution of personal identifiable information is prohibited" cannot support Viola's claim because "personal identifiable information" is defined to exclude a user's "[r]eal name").

In sum, "even in the internet platform context, a third-party beneficiary must still be expressly contemplated and intended by the contracting parties" and "third-party beneficiaries are more than just users of the website." *Melendez v. Vaiana*, No. EDCV162516JGBSPX, 2017 WL 8183139, at *5 (C.D. Cal. Oct. 19, 2017). Because the Basic Rules do not contemplate empowering millions of users, like Viola, to enforce their terms—and in fact, show a contrary intent—Viola's third-party beneficiary claim fails.

**B.    The Basic Rules vest Disqus with sole discretion over determining and policing violations, and make no definite commitments to third parties.**

The Basic Rules' provisions vesting Disqus with exclusive discretion over determining violations and enforcing compliance reinforce a Disqus-centric reading of the document. Viola invokes the Basic Rules' general warning that "[w]ebsites or website representatives, including site moderators, publishing inappropriate content or exhibiting inappropriate behaviors in connection with their use of the Service *may have* their Disqus account and/or Disqus forum suspended or terminated." SAC ¶ 107 (emphasis added). But this warning does not obligate Disqus to take any action; it simply informs the reader that Disqus retains discretion to do so, should it so wish.

Courts often hold that such discretionary language precludes third-party beneficiary status because it does not commit the contracting party to any definitive action. *Melendez*, 2017 WL 8183139, at *5 ("By retaining its discretion, Twitter does not obligate itself to remove infringing content, despite its language prohibiting certain user conduct. … [The terms of service's] provisions utilize lenient language providing only that Twitter will 'respond' to infringement

13

notices or 'remove Content ... at [its] discretion.' … [T]his is insufficient to establish an intent to benefit third persons."); *Joude*, 2014 WL 3107441, at *5 (holding that non-contracting party could not be third-party beneficiary of terms of service in which the software company, a contracting party, retained "discretion to remove content," which "made clear that [the software company] did not intend to commit [itself] to a particular course of action" for third parties); *cf. In re Google Location Hist. Litig.*, No. 5:18-CV-05062-EJD, 2021 WL 519380, at *9 (N.D. Cal. Jan. 25, 2021) (dismissing contract claim based on provision in terms of service that did "not actually bind Google to offer any particular privacy settings, but rather, merely explains to users where they can go to adjust their settings.").

Other provisions of the Basic Rules, not cited by Viola, further demonstrate Disqus's unfettered discretion to enforce (or not enforce) the Basic Rules' prohibitions as Disqus saw fit. For instance, Disqus retained "*sole discretion*" to make "individual account/forum deactivation decisions," and cautioned that "[t]he above list may be modified or expanded at any time." SAC Ex. D (emphasis added). Disqus also reserved "*sole discretion*" to restrict sites' activity that "imposes, or may impose … an unreasonable or disproportionately large load on our infrastructure," further underscoring that the Basic Rules' objective was to protect Disqus. *Id.* (emphasis added); *see also Jackson*, 2009 WL 1158829, at *5.

Indeed, the Basic Rules leave any remedies entirely in the hands of Disqus. *See* SAC Ex. D (leaving deactivation or content-removal decisions to Disqus, stating that websites or website representatives "may have their Disqus account and/or Disqus forum suspended or terminated"). There is no provision for websites or website representatives to sue for any breach of the document, and the document's one-way provisions would preclude any potential suit. If websites cannot sue for damages, then a third-party (like Viola) cannot. *See Mercury Casualty Co. v. Maloney*, 6 Cal.

14

Rptr. 3d 647 (Cal. Ct. App. 2003) ("[S]ettled law hold[s] that a third-party beneficiary cannot assert greater rights under the contract than those of the actual contracting party.") (citation omitted).

In short, Disqus made no firm promise to third-party commenters—or to anyone else, for that matter—in the Basic Rules.  This express lack of commitment precludes finding Viola a third-party beneficiary.  *Melendez*, 2017 WL 8183139, at *5; *Joude*, 2014 WL 3107441, at *5.

### C.    The Basic Rules exclude a user's "[r]eal name" from "personal identifiable information," precluding any breach based on posting Viola's real name.

Viola argues that Benton, by posting her real name, breached the Basic Rules' restriction against the "distribution of personal identifiable information."  SAC ¶¶ 28, 106 (paraphrasing SAC Ex. D).  She cannot base a third-party claim on this restriction, however, because the Basic Rules expressly exclude a user's "[r]eal name" from "personal identifiable information."  SAC Ex. F.

This provision is contained in the Basic Rules, which expressly incorporate the separate "Basic Disqus Rules" with a hyperlink.  *See id*. ("The <u>Disqus Basic Rules</u> apply to all Disqus accounts and violating them as a publisher or moderator may carry additional consequences for your forum(s).") (emphasis original).  The link provided for the "Disqus Basic Rules" takes the user to the "Basic Rules for Disqus."  SAC Ex. F (attaching this document as an exhibit).  Those linked rules, which "apply to all Disqus accounts" (*see* SAC Ex. D at 2), explicitly define "personally identifiable information" as follows:

> Examples of protected information: credit card number, home/work address, phone number, email address, social security number. *Real name isn't currently covered.*

SAC Ex. F (emphasis added).  Even assuming that the Basic Rules are a contract, they expressly incorporate a definition of personal identifiable information that does not include one's "[r]eal name."  *Id*.  Viola's claim that Benton's disclosure of her name was a disclosure of personal

identifiable information as defined by the Basic Rules thus fails as a matter of law and, with it, her third-party beneficiary claim.

**D.      Granting Viola (and countless other commenters) third-party standing is not consistent with the reasonable expectations of the contracting parties.**

A plaintiff seeking third-party beneficiary status must also show that affording a third party "its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Goonewardene*, 434 P.3d at 130.  Viola cannot satisfy this requirement.

Practically speaking, Viola's theory would have sweeping effect.  As she acknowledges, Disqus is "an application used by thousands of websites."  SAC ¶ 18.[8]  Deeming Viola a third-party beneficiary of the Basic Rules means that any of the potentially millions of commenters have standing to sue for breach of these rules.  Were such a wide-ranging result intended, one would expect it to be set forth expressly in the rules.  Courts decline to find third parties to be contract beneficiaries when doing so would have such far-reaching, unanticipated results.  *See, e.g.*, *Eagle Bear v. Harvey*, No. 19-CV-163-ABJ, 2020 WL 10356632, at *3 (D. Wyo. Aug. 25, 2020) ("If the Court were to accept [putative third party's] argument that they are an intended third-party beneficiary, that would mean all fifty facilities where [subcontractor] provides radiology services, as well as every HMO and insurer [subcontractor] contracts with, and any other potential third-party payors such as Medicaid and Medicare, would also be considered third-party beneficiaries. This interpretation leads to an absurd result which the parties clearly did not intend at the time of contracting."); *Patton v. Forest Lab'ys, LLC*, No. EDCV17922MWFDTBX, 2018 WL 5270476,

---

[8] In a 2011 post, Disqus stated: "The Disqus network of communities reaches nearly 500 million unique visitors every month. This is across the 750,000 websites using Disqus, with about 35 million users participating on these communities." *See* https://blog.disqus.com/the-numbers-of-disqus.

at *12 (C.D. Cal. May 10, 2018) (striking third-party beneficiary claim when "Plaintiffs might have been only incidentally or remotely benefitted by [contract], in the same way that any other member of the public might have been incidentally or remotely benefitted by it"), *aff'd sub nom. Patton v. Forest Lab'ys, Inc.*, 793 F. App'x 608 (9th Cir. 2020).

This reluctance is sound. If Disqus intended to draft a document that saddled its customers, like Nieman Labs, with the risk of broad-ranging damages liability, and if the customers were prepared to accept that liability, one would expect the parties to expressly declare that intent in any agreement. By attempting to insert that non-existent intent into the Basic Rules, Viola is asking this Court to rewrite the document. It should reject that invitation.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss Viola's third-party beneficiary claim, with prejudice, and without leave to amend.

Dated: August 25, 2021

*s/ Jonathan M. Albano*

Jonathan M. Albano, BBO #013850
  jonathan.albano@morganlewis.com
Andrew M. Buttaro, BBO #684499
  andrew.buttaro@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA 02110-1726
Phone: (617) 341-7700
Fax: (617) 341-7701

*Counsel for Defendant President and Fellows of Harvard College*

Jeremy D. Mishkin, *pro hac vice*
  jmishkin@mmwr.com
Kendra Lee Baisinger, *pro hac vice*
  kbaisinger@mmwr.com
**MONTGOMERY MCCRACKEN WALKER & RHOADS LLP**
1735 Market Street, 21st Floor
Philadelphia, PA 19103
Phone: (215) 772-1500
Fax: (215) 772-7620

Timothy J. Pastore, BBO# 634538
  tpastore@mmwr.com
**MONTGOMERY MCCRACKEN WALKER & RHOADS LLP**
437 Madison Avenue, 24th Floor
New York, NY 10022
Phone: (212) 551-7707
Fax: (212) 599-5085

*Counsel for Defendant Joshua Benton*

## CERTIFICATE OF SERVICE

I certify that on the date listed below, I electronically filed the foregoing document with the Court using the CM/ECF system, which sent notice of the filing to all registered participants, including the following counsel:

> Aaron M. Minc
> Andrew C. Stebbins
> Dorrian H. Horsey
> **MINC LLC**
> 200 Park Avenue, Suite 200
> Orange Village, OH 44122
>
> Marc J. Randazza
> **RANDAZZA LEGAL GROUP, PLLC**
> 30 Western Avenue
> Gloucester, MA 01930
>
> Jay M. Wolman
> **RANDAZZA LEGAL GROUP, PLLC**
> 100 Pearl Street, 14th Floor
> Hartford, CT 06103
>
> *Counsel for Plaintiff Francesca Viola*

Dated: August 25, 2021                    *s/ Jonathan M. Albano*
                                          Jonathan M. Albano