## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Francesca Viola,

    Plaintiff,

        v.

Joshua Benton; President and
Fellows of Harvard College,

    Defendants.

Civil Action No. 1:21-10426-LTS

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

LEGAL STANDARD .......................................................................................... 4

ARGUMENT ...................................................................................................... 4

    I.    Leave should be denied because of Viola's repeated failure to cure deficiencies and her undue delay in seeking amendment, and because her amendment would prejudice defendants. ............................................... 4

        A.    Viola has repeatedly failed to cure deficiencies in her pleadings. ............ 4

        B.    Viola's undue delay warrants denial of her motion to amend. ................. 6

        C.    Defendants would be prejudiced by further amendment. ......................... 8

    II.    Leave should be denied because Viola's proposed amendment is futile. .............. 9

        A.    Viola's new attempt to base her claim on the Terms of Service fails because this agreement shows a primary intent to benefit Disqus, not Viola and millions of other commenters. ............................................ 10

        B.    Viola's attempt to base her third-party claim on the BRD fails because it is precluded by the plain terms of this document and therefore amendment would be futile. ................................................... 18

        C.    Viola's continued attempt to base her third-party claim on the BRDPS fails because she has effectively conceded this document is not a contract and does not support her claim. ................................... 20

CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
    512 F.3d 46 (1st Cir. 2008).................................................................................................1, 4

*Agence France Presse v. Morel*,
    769 F. Supp. 2d 295 (S.D.N.Y. 2011)...........................................................................14

*Aponte-Torres v. Univ. Of Puerto Rico*,
    445 F.3d 50 (1st Cir. 2006)..........................................................................................4, 5

*Belcher v. Bank of New York Mellon*,
    No. 1:20-CV-10511-IT, 2021 WL 294089 (D. Mass. Jan. 28, 2021).............................7

*Bostwick v. 44 Chestnut St.*,
    No. 17-CV-12409-ADB, 2019 WL 2010219 (D. Mass. May 7, 2019) .............................7

*Calderón-Serra v. Wilmington Tr. Co.*,
    715 F.3d 14 (1st Cir. 2013)...............................................................................................7

*United States ex rel. D'Agostino v. EV3, Inc.*,
    802 F.3d 188 (1st Cir. 2015).........................................................................................4, 6

*Dyna–Med, Inc. v. Fair Emp't & Hous. Comm'n*,
    43 Cal.3d 1379, 241 Cal.Rptr. 67, 743 P.2d 1323 (1987) .........................................13

*Eagle Bear v. Harvey*,
    No. 19-CV-163-ABJ, 2020 WL 10356632 (D. Wyo. Aug. 25, 2020)...........................17

*Foman v. Davis*,
    371 U.S. 178 (1962).....................................................................................................4, 6

*Frappier v. Countrywide Home Loans, Inc.*,
    750 F.3d 91 (1st Cir. 2014)...............................................................................................7

*United States ex rel. Gagne v. City of Worcester*,
    565 F.3d 40 (1st Cir. 2009)...............................................................................................4

*Glassman v. Computervision Corp.*,
    90 F.3d 617 (1st Cir. 1996)...............................................................................................9

*In re Google Location Hist. Litig.*,
    No. 5:18-CV-05062-EJD, 2021 WL 519380 (N.D. Cal. Jan. 25, 2021).......................16

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Goonewardene v. ADP, LLC*,
  434 P.3d 124 (Cal. 2019) ...............................................................................11, 13, 17

*Hatch v. Dep't for Children, Youth & Their Families*,
  274 F.3d 12 (1st Cir. 2001) .............................................................................................9

*Jackson v. Am. Plaza Corp.*,
  No. 08-civ-8980, 2009 WL 1158829 (S.D.N.Y. Apr. 28, 2009) ..................................15

*Jones v. Aetna Cas. & Sur. Co.*,
  33 Cal. Rptr. 2d 291 (Cal. Ct. App. 1994) ..................................................................14

*Joude v. WordPress Found.*,
  No. C 14-01656, 2014 WL 3107441 (N.D. Cal. July 3, 2014).........................14, 16

*Melendez v. Vaiana*,
  No. EDCV162516JGBSPX, 2017 WL 8183139 (C.D. Cal. Oct. 19, 2017) ...........16

*O'Hara v. Diageo-Guinness, USA, Inc.*,
  370 F. Supp. 3d 204 (D. Mass. 2019) ............................................................................7

*Palantir Techs. Inc. v. Abramowitz*,
  No. 19-CV-06879-BLF, 2021 WL 2400979 (N.D. Cal. June 11, 2021) ...........10, 11

*Patton v. Forest Lab'ys, LLC*,
  No. EDCV17922MWFDTBX, 2018 WL 5270476 (C.D. Cal. May 10, 2018),
  *aff'd sub nom. Patton v. Forest Lab'ys, Inc.*, 793 F. App'x 608 (9th Cir. 2020) ...................18

*Pillar Project AG v. Payward Ventures, Inc.*,
  279 Cal. Rptr. 3d 117 (Cal. Ct. App. 2021) ...............................................................11

*Rovinelli v. Trans World Ent. Corp.*,
  No. CV 19-11304-DPW, 2021 WL 752822 (D. Mass. Feb. 2, 2021), *appeal
  dismissed*, No. 21-1160, 2021 WL 3772017 (1st Cir. May 12, 2021)..................5, 6

*Rowayton Venture Grp. LLC v. McCarthy*,
  No. CV 19-12240-FDS, 2020 WL 6136377 (D. Mass. Oct. 19, 2020) ...........5, 6, 9

*Santa Clara Valley Water Dist. v. CH2M Hill, Inc.*,
  No. 19-CV-08295, 2020 WL 4252677 (N.D. Cal. July 24, 2020).........................11

*Sosa v. Onfido, Inc.*,
  No. 21-1107, 2021 WL 3523197 (7th Cir. Aug. 11, 2021) ...................................15

*Spinks v. Equity Residential Briarwood Apts.*,
  171 Cal. App. 4th 1004 (2009) ...................................................................................12

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Steir v. Girl Scouts of the USA*,
  383 F.3d 7 (1st Cir. 2004)................................................................................7

*Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*,
  419 F. Supp. 3d 176 (D. Mass. 2019), *aff'd on other grounds*, 990 F.3d 31 (1st
  Cir. 2021)................................................................................................6

*Hagerty ex rel. United States v. Cyberonics, Inc.*,
  844 F.3d 26 (1st Cir. 2016)..........................................................................6, 8

**Statutes**

Cal. Civ. Code § 1559..................................................................................11

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, 6 *Federal Practice and Procedure* §
  1487 (3d ed.)........................................................................................8, 9

Fourth, amendment ........................................................................................2

Rule 12(b)(6)..............................................................................................9

Rule 15(a)................................................................................................1, 4

Defendants President and Fellows of Harvard College ("Harvard") and Joshua Benton submit this opposition to Plaintiff Francesca Viola's Motion for Leave to File Third Amended Complaint (ECF 74) (the "Motion").  For the reasons below, Viola's Motion should be denied.

## INTRODUCTION

Eighteen months after bringing suit, Viola asks the Court for leave to file a Third Amended Complaint.  This is Viola's fourth attempt to plead a viable contract-based claim—her second effort in the last two months alone—and it comes only after the Defendants (and the Court) have spent considerable time and effort identifying significant and recurring flaws in Viola's contract-based theories.  Although leave to amend should be "freely given when justice so requires," Rule 15(a) does not entitle a plaintiff to "leisurely repeated bites at the apple, forcing a district judge to decide whether each successive complaint [is] adequate."  *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008).  This Court can and should deny leave on multiple grounds.

Leave should be denied first because Viola has repeatedly failed to cure deficiencies in her pleadings.  Viola first advanced a contract claim in March 2020.  Eighteen months and four complaints later, Viola purports to have finally identified all the possible contracts that could support what has evolved into a third-party beneficiary claim.  Her longstanding failure to identify this fundamental element of her claim—an actual contract she can enforce against the Defendants—has continued even after this Court carefully weighed her claim in resolving the previous motion to dismiss.  Indeed, her latest request to amend is a de facto acknowledgment of the infirmity of her claim as currently pleaded.  Viola's sustained record of deficient pleading justifies denial of leave to amend her complaint for the third time.  *See infra*, § I(A).

Second, leave should be denied because Viola's latest attempt to amend amounts to undue delay.  Again, Viola has been on notice since March 2020 that she must plead a valid contract to properly state a claim of breach of contract, either directly (her original claim) or as a third-party

beneficiary (the successor version of this claim).  Moreover, since even before that time, she was aware of all facts that might have supported her claims, including all documents that could plausibly serve as a basis for her various contract theories.  The additional documents she belatedly identifies today (only one of which is actually a contract) were never obscured from her view. Viola cannot seek to deflect this undue delay by measuring instead from her most recent amended complaint, which she submitted two months ago.  *See* ECF 60.  Her inexcusable failure to plead an actual contract until this late stage is a clear case of undue delay.  *See infra*, § I(B).

Third, granting leave would prejudice defendants.  Defendants have already had to expend considerable resources contesting Viola's claims across two jurisdictions and three prior complaints; most recently, by preparing the motion to dismiss the Second Amended Complaint. *See* ECF 70, 71.  By seeking leave to file another complaint, Viola would render that motion, and Defendant's efforts to dismiss it, a nullity.  *See* ECF 78.  Were the Court to grant Viola's Motion, Defendants would again be forced to move to dismiss Viola's infirm claim.  This unwarranted reduplication of effort and multiple rounds of briefing could have been avoided had Viola simply decided on this most fundamental element of her claim: *What document is the actual contract to support her claim of breach*?  Instead, Defendants are put to briefing new and different legal issues, time and again, after Viola reviews Defendants' prior motion papers and concludes she should have pleaded something else.  *See infra*, § I(C).

Fourth, amendment is futile because Viola's proposed Third Amended Complaint still fails to allege a sustainable third-party beneficiary claim.  Viola's proposed amendment would address only one of Defendants' grounds to dismiss (*i.e.*, that she failed to plead a valid contract).  But she still has no answer for the Defendants' other arguments.  The Disqus Terms of Service on which she now seeks to rely, like the previous documents, shows no intent to benefit millions of third-

party users (like Viola) and in fact point to precisely the opposite conclusion.  *See infra*, § II.  For all of these reasons, leave to amend should be denied.

## **BACKGROUND**

In June 2021, this Court dismissed Viola's breach of contract claim in her first amended complaint.  ECF 54.  Viola premised her breach of contract claim on three documents: (1) a privacy statement posted on Harvard's main website; (2) the Basic Rules for Disqus-powered Sites ("BRDPS"), and (3) the Basic Rules for Disqus ("BRD") (collectively, the "Disqus Policies").  *Id.* at 20–22.  The Court held that Harvard's privacy statement was not an "enforceable contract" and that, even assuming it was a contract, Viola had failed to plausibly allege a breach.  *Id.* at 20–21, 23–24.  The Court also held that Viola had failed to plausibly allege that the Disqus Policies constituted a contract between Viola and Defendants.  *Id.* at 21.  The Court's opinion noted that during the hearing on Defendants' motion, Viola "for the first time" asserted a third-party beneficiary theory of relief.  *Id.*  Because Viola had not asserted the claim in her Complaint, her amended complaint, or in her "extensive briefing in opposition to the Motion to Dismiss," the Court declined to consider the theory in ruling on Defendants' motion.  *Id.*

In the Second Amended Complaint (ECF 60), Viola recast her breach claim as a third-party beneficiary claim.  SAC ¶¶ 103–113.  Defendants did not oppose Viola's request for leave to amend and instead moved to dismiss this claim on the merits.  Defendants advanced two arguments, each one fatal to a third-party beneficiary claim: (i) the BRDPS is not a valid contract; and (ii) even if it were, it shows no intent to benefit a third party like Viola.  ECF 71.

Upon receiving Defendants' motion to dismiss, Viola elected not to oppose the motion but moved instead for leave to submit a Third Amended Complaint, citing what she refers to variously as a "drafting error" and a "clerical error," which she alleges resulted in her "fail[ing] to properly plead the full extent of the agreements" to support her third-party beneficiary claim.  ECF 75 at 2,

4.  More specifically, she "failed to properly identify the Disqus Terms of Service," and "did not discover this drafting oversight until it was pointed out" in Defendants' motion to dismiss.  *Id.* at 2.  She now purports to base her third-party beneficiary claim on three documents—the BRDPS; the BRD, back in play after it was omitted from the prior complaint's contract claim; and now the Terms of Service—placing primary emphasis on the Terms of Service.  TAC ¶¶ 110–17.

## LEGAL STANDARD

Rule 15(a) provides that leave to amend generally should be "freely give[n] ... when justice so requires."  Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). "[E]ven so, [a] district court enjoys significant latitude in deciding whether to grant leave to amend." *ACA Fin. Guar. Corp.*, 512 F.3d at 55. "Reasons for denying leave include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment." *United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009) (citing *Foman*, 371 U.S. at 182).

## ARGUMENT

I.      **Leave should be denied because of Viola's repeated failure to cure deficiencies and her undue delay in seeking amendment, and because her amendment would prejudice defendants.**

A.      **Viola has repeatedly failed to cure deficiencies in her pleadings.**

"[B]usy trial courts, in the responsible exercise of their case management functions, may refuse to allow plaintiffs an endless number of trips to the well." *Aponte-Torres v. Univ. Of Puerto Rico*, 445 F.3d 50, 58 (1st Cir. 2006).  Any other approach "would impose unnecessary costs and inefficiencies on both the courts and party opponents." *ACA Fin. Guar. Corp.*, 512 F.3d at 57.

Despite three prior attempts over a 16-month period, Viola failed to adequately plead a contract claim.  *See United States ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 195 (1st Cir. 2015) (in evaluating repeated failures to cure deficiencies, "'[t]he number and nature of prior

amendments to a complaint' are also relevant considerations.") (quoting *ACA Fin. Guar. Corp.*, 512 F.3d at 56). Here, the facts make the argument. Viola first advanced a contract claim in her original complaint. *See* ECF 1, ¶¶ 79–87. She retained that claim in her first amended complaint. *See* ECF 10, ¶¶ 111–20. At the hearing on the motion to dismiss the first amended complaint, Viola unsuccessfully attempted to salvage her flawed contract claim by suggesting it could survive under a third-party beneficiary theory. ECF 54 at 21.

Guided by the Court's analysis of her failed contract claim, Viola repleaded it as a third-party beneficiary claim in her Second Amended Complaint. SAC ¶¶ 103–13. Defendants moved again to dismiss that claim, arguing that Viola failed to plead the existence of a valid contract and that the non-contractual document in any case showed no intent to benefit third parties. ECF 71. Now, she seeks to amend yet again, this time claiming that she has alleged the existence of a proper contract. Given this lengthy history, Viola's latest request is unwarranted. Having failed to properly plead her Second Amended Complaint—even after the benefit of a hearing on Defendants' motion to dismiss and the Court's ruling—Viola has forfeited any entitlement to a further pleading opportunity. *See Rovinelli v. Trans World Ent. Corp.*, No. CV 19-11304-DPW, 2021 WL 752822, at *18–19 (D. Mass. Feb. 2, 2021) (denying leave to amend, noting the court had "previewed … the principal shortcomings of" the previous complaint, but "[e]ven armed with that guidance, the case's revival was mounted without addressing the shortcomings"), *appeal dismissed*, No. 21-1160, 2021 WL 3772017 (1st Cir. May 12, 2021). The Court has no obligation to "sit as a sort of 'super-lawyer,'" that will "correct counsel's errors and omissions, or to provide a roadmap as to how to draft a proper complaint." *Rowayton Venture Grp. LLC v. McCarthy*, No. CV 19-12240-FDS, 2020 WL 6136377, at *3 (D. Mass. Oct. 19, 2020); *see also Aponte-Torres*, 445 F.3d at 58 ("Plaintiffs must exercise due diligence in amending [and refiling] their

complaints."); *Rovinelli*, 2021 WL 752822, at *18–19 ("It is not the obligation of the courts to guide litigants through endless rounds of pleading."); *Rowayton Venture Grp.*, 2020 WL 6136377, at *3 (denying leave to amend, noting that plaintiffs are not allowed to treat complaints as "risk-free trial balloon[s]").

Viola also has benefitted by having her contract-based claim tested by Defendants' three prior motions to dismiss (two filed in Pennsylvania prior to transfer and a third filed here).  ECF 8, 12, 70.  Her current motion came only after Defendants demonstrated that the Disqus Policies were not actually contracts.  *See* ECF 71 at 6.  This too supports denying leave to amend.  *See Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*, 419 F. Supp. 3d 176, 196 (D. Mass. 2019) (denying "another roll of the dice" when the plaintiff "had two opportunities to plead a viable" theory, and the "[a]mended [c]omplaint was filed after Defendants moved to dismiss the initial complaint, meaning [the plaintiff] already has been given one chance to cure pleading deficiencies identified by Defendants"), *aff'd on other grounds*, 990 F.3d 31 (1st Cir. 2021).  Viola's repeated failure to cure her contract-based claim's deficiencies, standing alone, justifies denial of leave to amend.  *See United States ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 195 (1st Cir. 2015); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B.    Viola's undue delay warrants denial of her motion to amend.

"[U]ndue delay, on its own, may be enough to justify denying a motion for leave to amend." *Hagerty ex rel. United States v. Cyberonics, Inc.*, 844 F.3d 26, 34 (1st Cir. 2016) (citation omitted). At the very least, the party seeking amendment bears "the burden of showing some valid reason for [the party's] neglect and delay."  *Id*.  "When determining whether the moving party has satisfied that burden, courts must consider '[w]hat the plaintiff knew or should have known and what he did or should have done.'" *Rowayton*, 2020 WL 6136377, at *2 (quoting *Hagerty*, 844 F.3d at 34). "Regardless of the context, the longer a plaintiff delays, the more likely the motion to amend will

be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) (citing *Acosta-Mestre*, 156 F.3d at 52–53).

From the time she first asserted a contract claim in March 2020, Viola has known, or at the very least should have known, that she needs an actual contract to adequately plead such a claim, yet she failed to do so during each of her three prior attempts to draft her complaint. *Bostwick v. 44 Chestnut St.*, No. 17-CV-12409-ADB, 2019 WL 2010219, at *2 (D. Mass. May 7, 2019) (denying leave to amend, noting that the plaintiff "should have been aware" of need to amend at least nine months earlier, and the plaintiff's failure to do so amounted to undue delay); *see also Frappier v. Countrywide Home Loans, Inc.*, 750 F.3d 91, 95–96 (1st Cir. 2014) (affirming denial of motion to amend when request for amendment was based on facts known to plaintiff years earlier); *cf. O'Hara v. Diageo-Guinness, USA, Inc.*, 370 F. Supp. 3d 204, 214 (D. Mass. 2019) (calling it "a serious question" as to whether amendment "should be denied because of undue delay" when a "proposed new claim … could have been alleged when th[e] case was filed").

The argument for undue delay is particularly strong here because Viola has not only had many chances to test her contract-based claim, but also had the benefit of this Court's guidance for adequately asserting that claim. *See supra*, § I(A); *see also Belcher v. Bank of New York Mellon*, No. 1:20-CV-10511-IT, 2021 WL 294089, at *3 (D. Mass. Jan. 28, 2021) (denying amendment partly because of undue delay, concluding that omissions in the complaint were "made even more salient" by the court's previous explanations as to what a proper pleading requires); *cf. Calderón-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 20 (1st Cir. 2013) (affirming denial of amendment on undue delay grounds, noting that the plaintiffs had sought amendment after they had "previously had amended their complaint" and after dismissal briefing).

Viola does not attempt to explain this lengthy delay, and instead falls back on the rote contention that her failure to include the document that forms the basis of her 18-month-old, thrice-pleaded contract claim was a "drafting error." Mot. 4 (reciting the boilerplate statement that "there is no undue delay"). Such a barebones argument cannot satisfy her "burden of showing some valid reason for [her] neglect and delay." Viola notably does not argue that she did not know or could not have known about the Terms of Service document that she seeks to introduce now as the foundation of her contract claim. Nor could she, as that document has been and continues to be publicly available. And yet in her three prior complaints she failed to identify the claim she alleges now. The Court should deny her request for leave to amend her complaint. *Hagerty*, 844 F.3d at 34 (citation omitted).

### C.    Defendants would be prejudiced by further amendment.

In evaluating prejudice from a proposed amendment, courts consider the "position of both parties and the effect the request will have on them." Charles Alan Wright & Arthur R. Miller, 6 *Federal Practice and Procedure* § 1487 (3d ed.). "This entails an inquiry into the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted." *Id.*

Here, the balance of the factors weighs heavily in favor of Defendants and denying the motion to amend. Defendants have already submitted three motions to dismiss in two different district courts. *See* ECF 8, 12, 70. Viola herself acknowledges that moving to dismiss a new complaint will entail significant additional work. *See* ECF 77 ("If the Plaintiff is allowed to amend, then the Defendants' arguments and, subsequently, Plaintiff's response will be significantly altered."). Given the absence of any compelling reason for Viola's failure to allege an actual contract, defendants should not be required to expend more resources in moving to dismiss Viola's

third-party beneficiary claim yet again.  *See* Wright & Miller, 6 *Federal Practice and Procedure* § 1487; *see also Rowayton*, 2020 WL 6136377, at *3 (D. Mass. Oct. 19, 2020) (denying leave, noting "a party that decides to hold back and await a ruling on a motion to dismiss should not be placed in a better position as a result.  To rule otherwise would encourage poor lawyering, waste valuable court resources, and *prejudice opposing parties*.") (emphasis added).

## II.    Leave should be denied because Viola's proposed amendment is futile.

Viola's Motion should be denied for the further reason that it is futile.  An amendment is futile if it fails to set forth a "general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory."  *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001).  *See also Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) (in deciding whether an amendment is futile, "the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion.").

In her Second Amended Complaint, Viola based her claim exclusively on one document: the BRDPS.  SAC ¶¶ 103–13.  In her proposed Third Amended Complaint, Viola bases her purported third-party beneficiary claim on three documents: (1) the Terms of Service; (2) the BRD; and (3) the BRDPS.  TAC ¶¶ 22–36, 110–15, 117 (citing all three documents).  In her telling, this constellation of documents reflects the "full extent of the agreements between Defendant Harvard and Disqus."  Mot. 2.  Even so, this blunderbuss approach falls short, and none of the three documents support her claim.

### A. Viola's new attempt to base her claim on the Terms of Service fails because this agreement shows a primary intent to benefit Disqus, not Viola and millions of other commenters.

Unable to answer Defendants' motion to dismiss, Viola now pivots to recenter her third-party claim on the Terms of Service.[1]  Even this foundational change cannot save her claim.  Defendants' motion submitted two grounds for dismissal.  First, it argued that Viola based her third-party claim exclusively on one document: the BRDPS.  SAC ¶¶ 103–13.  But this document is not a contract, and Viola did not plead that it is incorporated by reference into any other contract, such that Viola could enforce the BRDPS as a third party.  ECF 71, § I.  Second, Defendants argued that even if this document were a contract, it shows no intent to make Viola (and the tens of millions of other commenters on hundreds of thousands of websites that use Disqus) a third-party beneficiary of its terms.  *Id*. § II.  Viola's proposed amendment would address the first ground by identifying an actual contract, in the form of the Terms of Service agreed between Harvard and Disqus.  *See* TAC ¶¶ 110–17.  But the Third Amended Complaint does nothing to solve the second issue, because the Terms of Service—like the BRDPS—show no intent to make Viola a third-party beneficiary. To the contrary, the Terms of Service: (1) shows a primary intent to benefit Disqus; (2) underscores that primary intent by vesting Disqus with sole discretion over interpreting and applying key provisions; and (3) demonstrates no expectation that millions of commenters would be third parties. So even were yet another amendment allowed, it would not change the result, making amendment futile.[2]

---

[1] Viola agrees that the relevant Terms of Service are those that were in effect at the time of Viola's May 2018 post on the Nieman Lab website.  *See* ECF 70, Ex. A-1; TAC, Ex. D.

[2] It is well established that "a non-party, or nonsignatory, to a contract is not liable for a breach of that contract."  *Palantir Techs. Inc. v. Abramowitz*, No. 19-CV-06879-BLF, 2021 WL 2400979, at *11 (N.D. Cal. June 11, 2021) (citations and internal quotation marks omitted).  Here, Viola asserts that "Nieman Lab entered into a contract with Disqus and was bound by the TOS, BRDPS and BRD."  TAC ¶ 111.  And although Viola claims that Benton "breached the contract" between

1.      **Viola's amendment is futile because the Terms of Service does not show a clear intent to benefit Viola as a third party, as required under California law.**

In California, as elsewhere, "[a] third party beneficiary is someone who may enforce a contract because the contract is made expressly for his benefit." *Pillar Project AG v. Payward Ventures, Inc*., 279 Cal. Rptr. 3d 117, 123 (Cal. Ct. App. 2021).[3]  To state a third-party beneficiary claim under California law, a plaintiff must establish the following elements:

> the express provisions of the contract at issue, as well as all of the relevant circumstances under which the contract was agreed to, in order to determine not only (1) whether the third party would in fact benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties.

*Goonewardene v. ADP, LLC*, 434 P.3d 124, 130 (Cal. 2019); *Santa Clara Valley Water Dist. v. CH2M Hill, Inc.*, No. 19-CV-08295, 2020 WL 4252677, at *8 (N.D. Cal. July 24, 2020) (same).

At bottom, "[t]he test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract." *Pillar*, 279 Cal. Rptr. 3d at 123 (simplified).  "[T]he mere fact that a contract results in benefits to a third party does not render that party a third party beneficiary." *Id*.; *see also* Cal. Civ. Code § 1559 (requiring a third party to show that the contract was "made expressly for the benefit of" that party). Whether contracting parties intended to benefit a third party is a "question of ordinary contract interpretation" that should be "inferred, if possible, solely from the language of the written

---

Nieman Lab and Discus, *id*. ¶ 115, she does not—and could not—claim that Benton was a party to that contract.  Thus, Viola's decision to include Benton, a non-party to the contract, as a defendant to her third-party beneficiary claim is unsupportable and that claim must be dismissed as futile. *See Palantir Techs. Inc.*, 2021 WL 2400979, at *11.

[3] California law applies to Viola's claim based on the governing-law provision in the Terms of Service. TAC Ex. D at 13.

contract." *Spinks v. Equity Residential Briarwood Apts.*, 171 Cal. App. 4th 1004, 1023 (2009) (simplified), and so may be considered on a motion to dismiss. Viola fails to meet this standard, as the clear language of the Terms of Service does not reflect an intent to benefit Viola and in fact, adopting such a view would frustrate the purpose of the agreement and lead to absurd results.

Viola alleges, in this new iteration of this claim, that the Nieman Lab—and "by extension," Harvard—"entered into a contract with Disqus" by "using Disqus to administer and monitor the comments section on niemanlab.org." TAC ¶¶ 23, 111, 114. The Third Amended Complaint does not allege that Viola (or any other commenter) is a party to the Terms of Service, nor could it, given the nature of the Terms of Service. *See id*. ¶¶ 110–17. Instead, Viola alleges that she was a non-contracting party and third-party beneficiary of the Terms of Service. *See id*. ¶¶ 112, 114. Viola points to two provisions of the Terms of Service in advancing this claim, but neither reflects any intent to benefit third parties.

First, Viola cites the restriction in the "Service Rules" on "uploading, posting, transmitting, sharing, storing or otherwise making publicly available on the site, or other channels, any private, *personally identifiable information* of any third party, including, but not limited to: addresses, phone numbers, email addresses, Social Security numbers and credit card numbers." TAC ¶¶ 24, 112 (citing Ex. D at 3) (emphasis added). As a threshold matter, because a person's name is not "private," the quoted language does not apply to Benton's disclosure of Viola's name. *See* ECF 54 at 13–15 (dismissing Viola's publication of private facts claim). This conclusion is underscored by the examples of "private" personally identifiable information, which expressly includes as "private" information phone numbers, email addresses, Social Security and credit card numbers, and where one lives, but does not include a person's name. *See generally DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1156 (9th Cir. 2021) ("Contract terms are interpreted in light of the company

they keep."); *Dyna–Med, Inc. v. Fair Emp't & Hous. Comm'n*, 743 P.2d 1323, 1329 n.14 (Cal. 1987) (explaining that under the canon of noscitur a sociis "the meaning of a word may be enlarged or restrained by reference to the object of the whole clause in which it is used") (internal quotation marks omitted).[4]

Notably absent from Viola's complaint is the fact that the Terms of Service expressly incorporates Disqus's Privacy Policy.  *See* TAC, Ex. D at 1 ("You understand that by using the Services you consent to the collection, use and disclosure of your personally identifiable information and aggregate data as set forth in our Privacy Policy.").  That Privacy Policy makes clear that a user, like Viola, can have no reasonable expectation of anonymity because the user's information may be shared with third parties "in any manner" and for "any purpose":

> The information that we collect about you, both Personally Identifiable Information and Non-Personally Identifiable Information, *may be used by us, or shared by us with third parties, in any manner and for any purpose permitted by law.*

Ex. A-1 (emphasis added).[5]  This sweeping language undermines any suggestion that the Terms of Service were intended to benefit Viola, and it dispels any suggestion that Viola had any reasonable expectation that she would remain anonymous.

Rather than addressing Disqus's Privacy Policy, Viola points to another provision—the "Publisher Responsibility and Content Guidelines" of the Terms of Service—which prohibits "categories of content and behavior that jeopardize the Service by posing risk to users."  TAC ¶ 113.  Viola singles out a few of these categories: those prohibiting "[d]eceitful data collection,"

---

[4] In addition, considering "all of the relevant circumstances under which the contract was agreed to, *Goonewardene*, 434 P.3d at 130, the Disqus BRD, although not incorporated into the TOS, similarly provides that one's "[r]eal name isn't currently covered" as "personally identifiable information." TAC Ex. G at 1.

[5] Because Viola did not attach the Privacy Policy to the proposed Third Amended Complaint, Defendants include it as an exhibit to this opposition.

"[i]ntimidation of users of the Disqus Service," and "[p]rivacy violations." *Id*. But provisions like these reflect a primary intent to protect Disqus, not a third party like Viola, a point underscored by the bullet-pointed restrictions contained in the Guidelines:

### Publisher Responsibility and Content Guidelines

Disqus enables online discussion communities, and in doing so, freedom of expression and identity are core values of the Service. There are a number of categories of content and behavior, however, *that jeopardize the Service* by posing risk to users, publishers or third party services utilizing the Disqus platform.

- Blackmail or extortion
- Copyright or trademark Infringement
- Deceitful data collection
- Harm to minors or animals
- Impersonation
- Intimidation of users of the Disqus Service
- Malware
- Privacy violations
- Spam
- Unlawful activities

TAC, Ex. D at 8 (latter emphasis added).

This prefatory explanation makes Discus's intent perfectly clear: Disqus is concerned about "risk" to third parties only to the extent that such risk could "jeopardize" Disqus itself. *Id*. This plain language is dispositive, and a third party cannot enforce the contract simply because that third party might benefit incidentally from its terms. *See Joude v. WordPress Found*., No. C 14-01656, 2014 WL 3107441, at *5 (N.D. Cal. July 3, 2014) (dismissing contract claim based on a third-party beneficiary theory because even if a provision in a software company's terms of service benefitted a third party, the provision was not included expressly "for the benefit of" third-party users); *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 303 (S.D.N.Y. 2011) (rejecting third-party beneficiary theory under California law on the ground that the "[t]he Twitter terms of service" showed no intent to benefit third parties); *Jones v. Aetna Cas. & Sur. Co*., 33 Cal. Rptr.

14

2d 291, 296 (Cal. Ct. App. 1994) ("The fact that the third party is only incidentally named in the contract or that the contract, if carried out to its terms, would inure to the third party's benefit is insufficient to entitle him or her to demand enforcement.").

Indeed, construing these provisions—including Viola's curated restrictions on "[d]eceitful data collection," "[i]ntimidation," and "[p]rivacy violations"—as primarily intended to benefit Viola and other commenters makes little sense.   TAC ¶ 113.   Comparing Viola's selected provisions to the other bullet-pointed restrictions in the Terms of Service illustrates the point. Those other terms restrict behaviors like "[c]opyright or trademark infringement" or "malware." TAC, Ex D at 3.  Of course, Disqus does not prohibit copyright or trademark infringement because Disqus is primarily concerned with protecting the interests of rights-holders, and Disqus does not restrict malware because Disqus is primarily concerned with protecting the integrity of users' computers.  But Viola's crabbed construction of the Terms of Service would lead to just that unsupportable conclusion.

Courts have rejected third-party beneficiary claims based on similarly strained readings of a technology company's terms of service—often while construing provisions nearly identical to those at issue here.  *Compare Sosa v. Onfido, Inc.*, No. 21-1107, 2021 WL 3523197, at *6 (7th Cir. Aug. 11, 2021) (rejecting argument that third party was a beneficiary of company's terms of service when the terms "directly benefit[ed] [the software provider and contracting party], which has an interest in prohibiting illegal conduct on its platform and minimizing its exposure to liability related to such conduct") *with* TAC Ex. D (similarly prohibiting illegal conduct); *compare Jackson v. Am. Plaza Corp.*, No. 08-civ-8980, 2009 WL 1158829, at *5 (S.D.N.Y. Apr. 28, 2009) (finding that provision in Craigslist's terms of use prohibiting users from imposing "an unreasonable or disproportionately large load on our infrastructure" showed intent to benefit Craigslist, and "any

15

benefit received by plaintiffs is incidental") *with* TAC Ex. D (listing same prohibition in the "Service Rules").

In sum, "even in the internet platform context, a third-party beneficiary must still be expressly contemplated and intended by the contracting parties" and "third-party beneficiaries are more than just users of the website." *Melendez v. Vaiana*, No. EDCV162516JGBSPX, 2017 WL 8183139, at *5 (C.D. Cal. Oct. 19, 2017). Because the Terms of Service do not mean to empower millions of users, like Viola, to enforce their terms—and in fact the Terms show a contrary intent—Viola's third-party beneficiary claim fails, rendering the proposed amendment futile.

### 2. The Terms of Service vests Disqus with sole discretion over determining and policing violations, and makes no definite commitments to third parties.

The exclusive discretion granted to Disqus, both in determining violations of the Terms and Service and deciding whether to enforce them, independently bar Viola's third-party beneficiary claim. The "Publisher Responsibility and Content Guidelines" on which Viola relies warn that "[w]ebsites or website representatives … *may have* their Disqus account suspended or terminated," TAC ¶ 25 (emphasis added). But this warning does not obligate Disqus to take any action; it simply informs the reader that Disqus retains discretion to do so, should it so wish.

Courts often hold that such discretionary language precludes third-party beneficiary status because it does not commit the contracting party to any definitive action. *Melendez*, 2017 WL 8183139, at *5 (concluding that terms of service with discretionary, "lenient language" did not "establish an intent to benefit third persons"); *Joude*, 2014 WL 3107441, at *5 (rejecting third-party beneficiary claim, noting that the software company retained discretion to enforce provisions in terms of service, which "made clear that [the software company] did not intend to commit [itself] to a particular course of action" for third parties); *cf. In re Google Location Hist. Litig.*, No. 5:18-

16

CV-05062-EJD, 2021 WL 519380, at *9 (N.D. Cal. Jan. 25, 2021) (dismissing contract claim based on provision in terms of service that did "not actually bind Google to" a set course of action).

Other provisions, not cited by Viola, further demonstrate Disqus's unfettered discretion to enforce (or not enforce) the Terms of Service's prohibitions as Disqus saw fit.  For instance, Disqus made clear that the publisher guidelines "may be modified or expanded at any time, and individual account deactivation decisions remain at the sole discretion of Disqus."  TAC Ex. D at 8.  As this shows, the Terms of Service leave any remedies entirely in the hands of Disqus.  In fact, the Terms of Service use the phrase "sole discretion" thirteen times in describing Disqus's rights, underscoring that the Terms of Service were aimed primarily at protecting Disqus.  *Id*.  Disqus clearly did not intend to provide a wide-ranging right to users to sue its client websites for damages.

### 3. Granting Viola (and countless other commenters) third-party standing is not consistent with the reasonable expectations of the contracting parties.

A plaintiff seeking third-party beneficiary status must also show that affording a third party "its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties."  *Goonewardene*, 434 P.3d at 130.  Viola cannot satisfy this requirement.

Practically speaking, Viola's theory would have sweeping effect.  As she acknowledges, Disqus is "an application used by thousands of websites."  TAC ¶ 18.   Deeming Viola a third-party beneficiary of the Terms of Service means that any of the tens of millions of Disqus commenters have standing to sue for breach of these rules.  Were such a wide-ranging result intended, one would expect it to be set forth expressly in the rules.  Courts decline to find third parties to be contract beneficiaries when doing so would have such far-reaching, unanticipated results.  *See, e.g.*, *Eagle Bear v. Harvey*, No. 19-CV-163-ABJ, 2020 WL 10356632, at *3 (D. Wyo. Aug. 25, 2020) (rejecting third-party claim, noting that the plaintiff's "interpretation leads to an

absurd result which the parties clearly did not intend at the time of contracting."); *Patton v. Forest Lab'ys, LLC*, No. EDCV17922MWFDTBX, 2018 WL 5270476, at *12 (C.D. Cal. May 10, 2018) (striking third-party beneficiary claim when "Plaintiffs might have been only incidentally or remotely benefitted by [contract], in the same way that any other member of the public might have been incidentally or remotely benefitted by it"), *aff'd sub nom. Patton v. Forest Lab'ys, Inc.*, 793 F. App'x 608 (9th Cir. 2020).

This reluctance is well founded.  If Disqus intended to draft a document that saddled its customers, like Nieman Labs, with the risk of broad-ranging damages liability, and if the customers were prepared to accept that liability, one would expect the parties to expressly declare that intent in any agreement.

> **B.   Viola's attempt to base her third-party claim on the BRD fails because it is precluded by the plain terms of this document and therefore amendment would be futile.**

Viola also purports to predicate her third-party claim on the BRD, but this attempt is similarly unavailing.  The same core arguments for dismissing Viola's third-party claim based on the BRDPS apply with equal force to the BRD.  *See infra*, § II(C); *see also* ECF 71, § I(B).[6]  First, the BRD is not a contract.  *See* TAC, Ex. G.  Instead, it merely provides a brief, bullet-pointed list of certain prohibited activities.  *Id*.  The document lacks any prompt to indicate agreement with the bullet-pointed terms—there is no clickwrap mechanism or "browsewrap" language.  *See id*. This is no surprise, as the document is a unilateral statement from Disqus outlining Disqus's requirements and expectations, not a bargained-for exchange.  *See id*.  Instead, the document's bottom footer simply asks, "Did this answer your question?" *Id*.  That question is followed by three emojis.  *Id*.  All told, the BRD operates like a "frequently asked questions" page or an explanatory

---

[6] To the extent helpful to the Court, Defendants' memorandum in support of their motion to dismiss (ECF 71) addresses in more detail Viola's BRD arguments.

blog post.  As explained in the motion to dismiss, courts consistently refuse to treat documents like this—technology companies' explanatory webpages or standalone statement-of-use policies—as binding contracts.  *See* ECF 71, § I(B) (collecting authorities holding that webpages must meet well-established standards of contract formation in order to be given contractual effect and declining to treat explanatory webpages, like this one, as contracts).

In addition to not being a contract, the BRD is not incorporated by reference into any document that is a contract.  To the contrary, the Terms of Service contain a merger or integration clause providing that "[t]hese Terms supersede any previous Terms of Service and represent the *entire agreement* between Disqus and you." TAC Ex. D at 14 (emphasis added).  So not only did the Terms of Service not incorporate the BRD by reference; it expressly provided that any non-incorporated document was *not* part of the agreement with Disqus.  *See* ECF 71, § I(B) (explaining requirements for incorporation by reference and citing authorities rejecting attempts to give standalone webpages contractual effect when they are not expressly incorporated by reference into actual contracts).

Even were the BRD somehow deemed a contract, which it is not, the document shows no intent to benefit a third party like Viola.  This document loosely summarizes some aspects of the Terms of Service, which themselves do not show any intent to benefit third-party users.  *See supra*, § II(A).  As explained above, the Terms of Service are concerned with "categories of content and behavior … that jeopardize" Disqus.  TAC Ex. D at 7.  Any downstream benefit to a third party, like Viola, is incidental and nothing close to a legal right she can assert in this, or any way.  *See* ECF 71 § II(A) (collecting authorities rejecting third-party beneficiary claims when the document shows no intent to benefit the third party).  And the BRD, like the Terms of Service, vests Disqus

with considerable discretion to enforce and amend its terms, further undermining any supposed intent to benefit third parties. *See supra*, § II(A)(3).

Viola's invocation of the BRD is especially peculiar because this very document expressly excludes a user's "[r]eal name" from the restriction on "[p]osting personally identifiable information." *See* ECF 71 § II(C) (discussing this carve-out provision). Thus, even if this document somehow could be construed as a contract, it specifically carved out a user's real name from the restriction on posting information. *Id.* Viola's claim that Benton's disclosure of her name revealed personal identifiable information in "breach" of the BRD would therefore fail as a matter of law, even if it were a contract and she were a party to it.

### C. Viola's continued attempt to base her third-party claim on the BRDPS fails because she has effectively conceded this document is not a contract and does not support her claim.

Viola continues to attempt to base her third-party claim on the BRDPS, even though she seeks leave to amend precisely out of the recognition that this document cannot support her claim. *See* Mot. 2; ECF 77; *see also* TAC ¶¶ 26–32, 110–115, 117. Viola's concession aside, Defendants have already explained why Viola's claim cannot survive based on this document. *See* ECF 71. As Defendants observed, the BRDPS is not a contract and is not incorporated by reference into any other document that is a contract. *Id.* Viola acknowledges that the BRDPS is "not explicitly incorporated within the [Terms of Service]." TAC ¶ 27. So while Viola continues to allege that this document supports her third-party claim, she has effectively conceded that that the claim must be dismissed to the extent it is based on this document.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court deny Viola's Motion.

20

Dated: October 14, 2021

*s/ Jonathan M. Albano*

Jonathan M. Albano, BBO #013850
  jonathan.albano@morganlewis.com
Andrew M. Buttaro, BBO #684499
  andrew.buttaro@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA 02110-1726
Phone: (617) 341-7700
Fax: (617) 341-7701

*Counsel for Defendant President and Fellows of Harvard College*

Jeremy D. Mishkin, *pro hac vice*
  jmishkin@mmwr.com
Kendra Lee Baisinger, *pro hac vice*
  kbaisinger@mmwr.com
**MONTGOMERY MCCRACKEN WALKER & RHOADS LLP**
1735 Market Street, 21st Floor
Philadelphia, PA 19103
Phone: (215) 772-1500
Fax: (215) 772-7620

Timothy J. Pastore, BBO# 634538
  tpastore@mmwr.com
**MONTGOMERY MCCRACKEN WALKER & RHOADS LLP**
437 Madison Avenue, 24th Floor
New York, NY 10022
Phone: (212) 551-7707
Fax: (212) 599-5085

*Counsel for Defendant Joshua Benton*

## **CERTIFICATE OF SERVICE**

I certify that on the date listed below, I electronically filed the foregoing document with the Court using the CM/ECF system, which sent notice of the filing to all registered participants, including the following counsel:

Aaron M. Minc
Andrew C. Stebbins
Dorrian H. Horsey
**MINC LLC**
200 Park Avenue, Suite 200
Orange Village, OH 44122

Marc J. Randazza
**RANDAZZA LEGAL GROUP, PLLC**
30 Western Avenue
Gloucester, MA 01930

Jay M. Wolman
**RANDAZZA LEGAL GROUP, PLLC**
100 Pearl Street, 14th Floor
Hartford, CT 06103

*Counsel for Plaintiff Francesca Viola*

Dated: October 14, 2021                    *s/ Jonathan M. Albano*
                                           Jonathan M. Albano